UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT        :

                                                  :        February __, 2020   3:20mj176 (WIG)

COUNTY OF NEW HAVEN        :        **FILED UNDER SEAL**

FEB 21 2020
FILED - USDC -

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Allyn J. Wright, a Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

1. I am a police officer for the City of New Haven, Connecticut, and have been a certified police officer in the State of Connecticut since March 2012.

2. I am currently assigned as a Task Force Officer with the Drug Enforcement Administration ("DEA"), under the United States Department of Justice. More specifically, I am assigned to the New Haven District Office ("NHDO") Organized Crime Drug Enforcement Task Force. As a police officer and task force officer, I have conducted numerous investigations of violations of the law. I have participated in the execution of state and federal search warrants. I have directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, and undercover activities. I have debriefed and managed confidential sources. I am familiar with the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have a Bachelor of Science in Chemical Engineering from North Carolina A&T State University and a Master of Science in Financial Crimes Investigations from the University of New Haven. I have also attended numerous law enforcement training courses related to the field of drug law enforcement.

3. During my years in law enforcement, I have participated in investigations



involving individuals suspected of distributing illegal drugs; coordinated controlled purchases of illegal drugs using confidential sources and undercover police officers; written, obtained and coordinated the executions of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs; conducted electronic and physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the purchase and sale of illegal drugs; and spoken with informants and subjects, as well as other local, state and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have also supervised the activities of cooperating witnesses who have provided information and assistance in the federal prosecution of drug offenders. Accordingly, I am familiar with the behaviors, methods and common practices of persons and organizations that illegally traffic and distribute controlled substances, as well as the devices commonly used by them. As a result of my training and experience, I am familiar with the manner in which controlled substances are commonly imported, manufactured, processed, packaged, and distributed. I know the relative wholesale and retail value of various types of controlled substances.

4. I am a law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21 U.S.C. § 841(a)(1) and other federal offenses.

5. I am currently participating in an investigation of Geraldo MOYA, a.k.a. "Gabby," and others, for a federal narcotics trafficking offense, specifically the trafficking of approximately one kilogram of cocaine. Based on the facts set forth in this affidavit, there is probable cause to believe that MOYA has violated 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (possession with intent to distribute narcotics) (hereinafter the "target offense"). I submit this affidavit in support of a



criminal complaint and arrest warrant for MOYA.

6. The information contained in this affidavit is based on the investigation to date, which includes, but is not limited to, my personal knowledge of and involvement in the investigation, interviews, my training and experience as a criminal investigator, and my conversations with other law enforcement officers and investigators. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to support the requested criminal complaint and arrest warrant.

## BACKGROUND

7. This is a joint investigation by the DEA and the New Haven Police Department ("NHPD") and involves the October 2, 2019 arrest of MOYA, David ESTRADA, and Bryan BERMUDEZ-MARTINEZ by members of the NHPD patrol division following a motor vehicle stop in New Haven. NHPD officers located approximately one kilogram of cocaine, concealed within a portable speaker, in the trunk of MOYA's vehicle.

## PROBABLE CAUSE

### October 2, 2019 NHPD Arrests

8. On October 2, 2019, at approximately 9:15 A.M., NHPD Patrol Officer Jason Santiago was on routine patrol in the area of Grand Avenue and East Pearl Street, New Haven, CT. This area is known for illicit narcotics activity and is plagued with prostitution, street level narcotics users and dealers, and other quality of life issues. Officer Santiago often patrols the area to show police presence in an attempt to deter criminal activity.



9. While in the area, Officer Santiago was approached by a woman. She stated that she had observed a man standing on the corner of Grand Avenue and Front Street with what she believed was a rifle sticking out of a bag. In response, Officer Santiago canvassed the area around the parking lot of the Grand Café, located at 124 East Pearl Street. As he did so, a white Dodge Charger bearing CT marker AV31148 backed out of a parking spot and almost struck his marked patrol car. Officer Santiago observed two men inside the car: the operator, later identified as MOYA, and the front-seat passenger, later identified as BERMUDEZ-MARTINEZ. The Charger left the parking lot at a high rate of speed. Officer Santiago did not immediately address this conduct because he was still canvassing for the person reportedly armed with a rifle.

10. While canvassing, Officer Santiago stopped at the red traffic signal at the intersection of Front Street and Grand Avenue. Officer Santiago observed the white Charger in front of him, stopped on Front Street facing southbound. The Charger made a left turn onto Grand Avenue while the traffic signal was still red. Officer Santiago addressed the violation by conducting a motor vehicle stop on the Grand Avenue Bridge, located on Grand Avenue between Front Street and Quinnipiac Avenue.

11. Officer Santiago approached the driver's side window. He told the driver, MOYA, to roll down the back window because there was a rear passenger sitting directly behind the driver's seat. The rear-seat passenger was later identified as David ESTRADA (DOB XX-XX-77). As the rear window was rolled down, Officer Santiago smelled a strong chemical odor. Officer Santiago advised ESTRADA to keep his hands on his lap as Officer Santiago spoke to MOYA.

12. Officer Santiago asked MOYA for his driver's license, registration, and proof of insurance. As MOYA looked for those items, Officer Santiago smelled a strong odor of raw

marijuana. NHPD Sergeant Feliciano, who was covering Officer Santiago from the passenger side of the car, asked MOYA if there were any drugs in the car. MOYA admitted to having marijuana and pointed toward the driver's side door. Officer Santiago asked if there were other drugs in the vehicle. MOYA said there were not.

13. Officer Santiago observed that ESTRADA appeared to be nervous—his hands were shaking. Officer Santiago again told ESTRADA to keep his hands on his lap. Officer Santiago then told MOYA to step out of the car. MOYA was escorted to the passenger side of the Charger to avoid traffic. As Officer Santiago conducted a pat down for weapons, Sgt. Feliciano confirmed that he found marijuana inside the front driver's side of the Charger.

14. Officer Santiago conducted a search of MOYA's person for additional contraband, finding none. MOYA was placed in handcuffs.

15. BERMUDEZ-MARTINEZ and ESTRADA were removed from the car and placed in handcuffs.

16. Sgt. Feliciano searched the Charger. In the driver's side door pocket, he found one "Dunlop" plastic cylindrical container containing a green plantlike substance. Officer Santiago later removed a small sample of this substance and tested it using a Sirchie #8 marijuana field tester. The result was positive for the presence of marijuana. Officer Santiago is certified to perform this test, which is deemed reliable by the State of Connecticut Toxicology Laboratory. The marijuana was later found to weigh approximately 1.415 ounces. Also found in the car was a silver marijuana grinder containing a green plantlike substance. Officer Santiago performed the same procedure mentioned above using a different Sirchie #8, and the grinder tested positive for the presence of marijuana. As Officer Santiago searched the car, he continued to smell a strong chemical/ marijuana odor coming from the rear of the vehicle.



17. Officer Santiago opened the trunk, and the smell got stronger. Officer Santiago asked MOYA if there were more drugs in the trunk. Moya said there were not. MOYA, who was now sitting on the curb, begged Officer Santiago not to give him a ticket because he had received a ticket the previous week and would have his license suspended if he received another. Officer Santiago advised MOYA that what he had done was wrong and that drugs had been found in the car, making things worse.

18. Officer Santiago looked inside the trunk and saw a plastic bag with a box inside of it. The box was for a portable speaker. Officer Santiago removed the box from the trunk. MOYA immediately stated, "That's my speaker, I just bought that." When Officer Santiago picked up the box containing the speaker, he noticed that it was unusually heavier than most speakers. Officer Santiago looked at the box and observed that it appeared to be damaged—there was tape holding it together. Officer Santiago thought that this was unusual, because MOYA had stated that he had just bought the speaker.

19. Officer Santiago opened the box, and the chemical smell became unbearable. Inside the box was a black portable speaker. Officer Santiago removed the speaker from the box and noticed that the speaker was sticky to the touch. He also observed that the speaker appeared to be filled with spray foam, which was oozing out of both ends of the speaker.

20. Officer Santiago told Sgt. Feliciano what he had found and explained that he believed there was a "kilo," *i.e.*, 1000 grams of a drug, inside the speaker. Sgt. Feliciano looked inside the speaker and confirmed that the packaging was consistent with the packaging of drugs for distribution.



21. MOYA spontaneously said that if the officers gave him a ticket, he would leave. Officer Santiago noted that, prior to discovery of the speaker, MOYA had been begging the officers not to give him a ticket; now, he was asking for one.

22. MOYA, BERMUDEZ-MARTINEZ, and ESTRADA were placed in the back seats of separate marked police cruisers.

23. Sgt. Feliciano is a K-9 Officer. He requested that the contents of the trunk be placed on the ground behind the vehicle, then retrieved his K-9 partner, Ax, from his cruiser. Sgt. Feliciano placed Ax close to the contents of the trunk, now dispersed on the ground. Ax showed alert behavior between a plastic bag and the box containing the speaker.

24. Sgt. Feliciano instructed Officer Santiago to open the speaker. The officers observed what appeared to be plastic inside, but they were at first unable to remove it. Sgt. Feliciano then used his Victorinox multi-tool to saw off part of the speaker, enabling him to pry it open. Inside, the officers found a vacuum-sealed package suspected to contain a "kilo" of drugs. Sgt. Feliciano placed the package in the trunk and contacted the NHPD Bureau of Identification, as well as DEA.

25. I arrived on the scene shortly thereafter. I inspected the package found in the trunk, cut through the plastic wrapping, and found inside a white powder/rocklike substance. I tested the substance using the Thermo Scientific TruNarc Narcotics Tester. The substance tested positive for the presence of cocaine hydrochloride.

26. All three individuals—MOYA, ESTRADA and BERMUDEZ-MARTINEZ—were placed under arrest and charged accordingly by the State of Connecticut. They were transported to the NHPD detention facility at 1 Union Avenue for further processing.

### Seized Cocaine

27. On December 12, 2019, the DEA Northeast Laboratory tested the cocaine seized by NHPD on October 2. The gross weight of the cocaine was 1041 grams, and the tested weight was 985(+/- 1) grams. The DEA Northeast Laboratory confirmed that the substance was in fact cocaine hydrochloride, a Schedule II controlled substance.

### MOYA'S Interview

28. Following the arrests described above, NHPD Criminal Intelligence Unit Detective Frank Sanchez and I interviewed MOYA, ESTRADA and BERMUDEZ-MARTINEZ at NHPD Headquarters, located at 1 Union Avenue, New Haven, CT. MOYA admitted that the Charger belonged to him, but all three individuals denied any knowledge of the cocaine concealed within the portable speaker.

### **CONCLUSION**

29. I submit that this affidavit establishes probable cause to believe that, on October 2, 2019, Gerald MOYA possessed with the intent to distribute more than 500 grams of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B). Accordingly, I request that the Court issue a warrant for MOYA'S arrest.

ALLYN J. WRIGHT
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before me this 21st day of February, 2020

/s/ William I. Garfinkel

HONORABLE WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE